IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **GREATER OMAHA PACKING CO., INC.,**<br><br>                   **Plaintiff,**<br><br>    vs.<br><br>**JOHNSON FEED, INC.,**<br><br>                   **Defendant.** | 8:24CV104<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Refiled Rule 37(b)(2) Motion for Discovery Sanctions (Filing No. 49) filed by Defendant. Defendant asks that the Court dismiss Plaintiff's claims with prejudice, or in the alternative, prohibit Plaintiff from offering evidence to support its claimed damages of lost wages and lost product as a discovery sanction pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure. The Court will deny the motion.

**BACKGROUND**

Plaintiff filed this action on March 21, 2024, seeking damages it incurred arising out of a semi-truck accident that occurred on October 25, 2023. (Filing No. 1). At approximately 7:20 a.m. on that date, an employee of Defendant was driving a semi-truck that was allegedly too large to negotiate a turn, hitting a utility pole and causing a widespread power outage in the commercial area in which Plaintiff's meat packing facility is located. Plaintiff alleges this power outage forced it to "shut down its operations for a production day, add a Saturday to its production schedule in order to meet customer demand, and dispose of a significant number of cattle carcasses that awaited processing which could not be refrigerated in compliance with food safety standards," resulting in over $1 million in damages. (Filing No. 1 at pp. 1-2).

Defendant denies its driver was negligent. (Filing No. 10 at pp. 9-10). Defendant also raises numerous affirmative defenses, including comparative fault and comparative/contributory negligence, failure to mitigate damages, intervening/superseding cause, lack of proximate cause, that Plaintiff's damages were not foreseeable, among other defenses. (Filing No. 10 at pp. 9-10).

The Court entered a Case Progression Order (Filing No. 18) on June 5, 2024, setting forth deadlines for completing written discovery, expert disclosures, depositions, and for filing motions to compel and dispositive motions, among other deadlines. The parties proceeded with

discovery without notifying the Court of any issues until October 17, 2024, when they filed a Stipulation to extend the deadline for filing motions to compel due to ongoing disputes between the parties about written discovery. (Filing No. 20). The Court granted that extension (Filing No. 21), and then granted a second jointly requested extension, making the motion to compel deadline November 19, 2025. (Filing Nos. 22-23). As in the original Case Progression Order, these extensions reminded the parties, "A motion to compel . . . shall not be filed without first contacting the chambers of the undersigned magistrate judge on or before the motion to compel deadline to set a conference to discuss the parties' dispute, and after being granted leave to do so by the Court." (See, e.g. Filing No. 18).

On November 19, 2024, the parties filed a Stipulation Regarding Discovery Responses. (Filing No. 24). This Stipulation provided that the parties "have reached agreements which resolve all of their discovery issues without court intervention." The Stipulation continued: "As part of the agreement, "Plaintiff is producing additional documents and/or supplementing its responses to Request Nos. 11, 18, 21, 22, 24, 25, 27, 29-32, 41-43, 51, and 57 within Defendant's First Request for Production ["RFP"], and its answers to Interrogatory Nos. 3, 5, 11, 12, and 14 within Defendant's First Set of Interrogatories in manners consistent with the Parties' agreements regarding those discovery requests." The parties agreed that Plaintiff would complete such supplementation by December 3, 2024. (Filing No. 24 at p. 2).

The Stipulation also noted "two outstanding issues" that the parties would continue to "work cooperatively" to resolve. Specifically, as to RFP 40, the parties discussed that "in all likelihood," most or all of Plaintiff's product manuals for equipment "may prove to be unnecessary," but Defendant reserved the right to make a subsequent showing that such information was relevant and proportional. Second, in response to RFPs 14, 15, 16, 18, and Interrogatories 3, 5, 11, 12, 14, and 19, the parties continued to dispute the scope of identifying information Plaintiff must disclose regarding employees working at Plaintiff's facility on the date of the incident. Plaintiff "agreed to provide identifying information for all supervisors, managers, and similar managerial-level employees working on the date of the incident who were involved in decision making regarding the incident, and to provide all responsive information for non-managerial employees with the caveat that the names and related identifiers of non-managerial level employees will be redacted." Defendant disagreed and "believe[d] that the names of non-managerial level employees working at the facility on the date of the incident

should also be provided, at least to the extent that Plaintiff is seeking damages for those employees' wages/downtime." "As a compromise," the parties agreed that Plaintiff need not produce non-managerial level employees' names and similar identifiers, but Defendant may demonstrate the relevance and proportionality of further disclosure "as the case progresses[.]" (Filing No. 24 at pp. 2-3). The Court approved the parties' Joint Stipulation on November 20, 2024, stating, "Plaintiff shall supplement the discovery responses identified in the Stipulation consistent with the Parties' agreements on or before December 3, 2024." (Filing No. 25).

On January 27, 2025, Defendant filed its first Motion for Discovery Sanctions (Filing No. 33) seeking dismissal of Plaintiff's claims for failure to comply with the Court's "Discovery Order." (Filing No. 33). After reviewing the motion, the Court scheduled a telephonic hearing for February 4, 2025. (Filing No. 37). On January 31, 2025, the parties filed a Joint Motion to Refer the Case to Mediation, Extend Certain Deadlines, and to Terminate the Pending Motion (for sanctions). (Filing No. 40). The parties agreed that the case should be referred to mediation in February 2025, and jointly sought an extensions of the expert disclosure and dispositive motion deadlines; if those extensions were granted, Defendant agreed to "termination" of its motion for sanctions without prejudice. (Filing No. 40 at p. 3). On February 3, 2025, the Court approved the Stipulation and referred the case to mediation, which the parties had scheduled to take place on February 14, 2025. (Filing No. 41). The Court denied without prejudice Defendant's motion for sanctions and adjusted case progression deadlines, extending the expert disclosure deadline for the parties to March 19, 2025, and the dispositive motion deadline to April 28, 2025. (Filing No. 41).

Mediation was unsuccessful, and on February 18, 2025, Defendant again filed a Motion for Sanctions, asserting Plaintiff "did not provide any responses to any of the court-ordered Interrogatories or Requests for Production by the required deadline" and instead "produced one document . . . that consists of two columns of numbers with no explanation." (Filing No. 42-1 at p. 4). The Court scheduled a telephonic hearing for February 26, 2025. (Filing No. 45).

During the hearing on February 26, 2025, the Court heard both parties' characterizations of Plaintiff's discovery efforts leading up to that point, and commented that Defendant's motion for sanctions did not appear to fully set forth the history of Plaintiff's discovery efforts. (See Filing No. 46). Following the hearing, the Court ordered the parties to "meet and confer regarding outstanding written discovery"; directed Plaintiff to "serve formal supplemental

3

discovery responses and file a certificate of service"; deemed Defendant's motion for sanctions withdrawn; and granted Defendant "leave to file both a motion to compel as to outstanding written discovery and a motion for sanctions as to Plaintiff's failure to respond to court orders by March 12, 2025."[1]  (Filing No. 45).

On March 4, 2025, Plaintiff filed a certificate of service stating it served its discovery responses upon counsel for Defendant by email on the following dates:

1. Plaintiff's Response to Defendant's First Requests for Production of Documents, on October 3, 2024;
2. Plaintiff's Response to Defendant's First Set of Interrogatories, on October 3, 2024;
3. Plaintiff's Supplemental Response to Defendant's First Requests for Production of Documents, on November 15, 2024;
4. Plaintiff's Supplemental Response to Defendant's First Set of Interrogatories, on November 15, 2024;
5. Plaintiff's Second Supplemental Response to Defendant's First Requests for Production of Documents, on January 27, 2025;
6. Plaintiff's Second Supplemental Response to Defendant's First Set of Interrogatories, on January 27, 2025;
7. Plaintiff's Consolidated Supplemental Response to Defendant's First Requests for Production of Documents, on March 4, 2025; and
8. Plaintiff's Consolidated Supplemental Response to Defendant's First Set of Interrogatories, on March 4, 2025.

([Filing No. 47](#)).  On March 12, 2025, Plaintiff filed a certificate of service stating it served Plaintiff's Third Supplemental Response to Defendant's First Requests for Production of Documents on March 11, 2025; and served Plaintiff's Third Supplemental Response to Defendant's First Set of Interrogatories on March 12, 2025.  ([Filing No. 48](#)).

Immediately after Plaintiff filed the second certificate of service, Defendant refiled the instant motion for sanctions.  ([Filing No. 49](#)).  Defendant did not file a motion to compel. Defendant's motion is based upon Plaintiff's asserted "fail[ure] to comply with the Court's Discovery Order Deadline of 12/3/2024."  ([Filing No. 49-1](#)).  Defendant acknowledges Plaintiff "has since supplemented its discovery responses" but finds it "hard to believe" Plaintiff's statement that it "has located no responsive documents" responsive to RFPs 24, 25, 27, 29, 31, 32, (seeking Plaintiff's employees' internal communications, communications with federal regulatory agencies, the Omaha Public Power District, and suppliers and customers regarding the power outage incident); RFP 11 (USDA, FSIS, or FDA inspection records from 30 days prior to

---

[1] Providing Defendant with leave was not a comment on the propriety or merit of such motions.

4

the Incident through 30 days after the power outage incident); RFP 30 (contracts, sales agreement, or other documents related to the sales of the Plaintiff's products); and RFPs 41, 42, 43 (work schedules or production schedules for employees). Defendant asserts it has been "flailing in the dark for six plus months" in relation to critical facts about Plaintiff's claims due to Plaintiff's failure to provide adequate discovery responses. (Filing No. 49-1 at p. 5).

Plaintiff counters that Defendant's representations about Plaintiff's discovery responses and claims to be "flailing in the dark" about Plaintiff's claims are "demonstrably false." (Filing No. 53 at p. 2). As early as June 12, 2024, when Plaintiff served its initial disclosures, Plaintiff disclosed it is seeking damages in the amount of $627,658.00 for lost product (including whole cattle, $311,056.00 in additional labor, and $75,645.00 in overhead expenses; identified documents and other tangible things Plaintiff may utilize to support its claims;[2] and identified eight individuals and described their potentially relevant information. (Filing No. 54-3). Defendant served its First Requests for Production and First Set of Interrogatories on July 23, 2024. Following agreed extensions between counsel, Plaintiff timely served its first responses and answers to that discovery on October 3, 2024. Plaintiff's responses and answers consisted of a number of objections, including to the overbreadth of the requests. (Filing No. 54-1 at ¶ 6; Filing No. 49-5; Filing No. 49-6).

On October 16, 2024, Defense counsel provided Plaintiff's counsel with a letter outlining the deficiencies in Plaintiff's discovery responses. (Filing No. 49-7). On October 17, 2024, counsel for the parties discussed by telephone defense counsel's October 16, 2024, letter and Plaintiff's position that Defendant's discovery requests were overbroad. (Filing No. 54-1 at ¶ 7). Following this meet and confer, the Court granted the parties' agreed motion to extend the motion to compel deadline, and Plaintiff served over 200 pages of responsive documents on November 12, and November 14, 2024, in its Supplemental Responses to Requests for Production and Supplemental Answers to Interrogatories. (Filing No. 54-1 at ¶¶ 8-9; Filing No.

---

[2] Including "Relevant time and payroll records relating to Plaintiff's production employees; "Purchase orders, contracts, and other documents evidencing Plaintiff's procurement of cattle for processing on October 25, 2023, and Plaintiff's expense associated with such procurement; Financial information demonstrating Plaintiff's revenue in relation to processed cattle sold to customers during the time period of October 1, 2023 through November 30, 2023; Documents reflecting purchase orders and customer orders in relation to cattle processed during the week of October 22, 2023; The Investigator's Motor Vehicle Crash Report authored by the Omaha Police Department on or about October 26, 2023, together with any materials and documents within the file maintained by the Omaha Police Department; Videotaped footage of the incident; Documents reflecting Plaintiff's standards and temperature requirements for processed beef; and Documents necessary for rebuttal and impeachment." (Filing No. 54-3 at pp. 2-3).

54-4; Filing No. 54-5). In this supplemental production, Plaintiff produced a document "identifying the affected beef carcasses and their source was disclosed on November 14, 2024," responsive to RFPs 52, 53, 74, and 75. (Filing No. 53 at p. 3). Additionally, Plaintiff's supplemental answer to Defendant's Interrogatory No. 12, served on November 15, 2024, provides the following information regarding the lost product:

> The Product consists of 186 beef carcasses, which had a combined live weight of 244,680 pounds. Additional details regarding The Product, its origin, and its disposition are set forth within the documents identified by GOPC_000189 – GOPC_000205. Photographs/videos of The Product have also been provided in conjunction with Greater Omaha's Responses to First Requests for Production. Persons likely to have personal knowledge that The Product lost value are identified in Greater Omaha's Rule 26(a) Initial Disclosures. Greater Omaha refers Plaintiff to each of the above-referenced documents. Greater Omaha also incorporates its Answer to Interrogatory No. 5, supra., as if fully set forth herein.

(Filing No. 54-5 at pp. 8-10).

On November 18, 2024, counsel for Plaintiff and Defendant held another telephone conference to discuss what Plaintiff still believed were Defendant's overbroad discovery requests. (Filing No. 54-1 at ¶ 10). During their discussion, Plaintiff's counsel noted additional documents may not exist in response to RFPs 11, 21, 22, 25, 27, 29, and 30, but if documents were located Plaintiff would produce them. Counsel also explained Plaintiff does not have a production schedule "hanging around its premises (because work has started at the same time each morning for quite some time)," but if it found responsive documents, Plaintiff would produce them in response to RFPs 41-34. Counsel also "discussed the fact that Plaintiff does not utilize back-up generators in its facility." (Filing No. 54-1 at ¶ 10). This telephone conference resulted in the parties' filing the November 19, 2024, Stipulation Regarding Discovery Responses, with the agreed supplementation date of December 3, 2024. (Filing No. 24).

On December 3, 2024, Plaintiff's counsel emailed defense counsel stating, "Outstanding information is starting to roll in for the supplemental production and we will be in position to add the documents to the Sharespace tomorrow," and requested an "additional day or two" to supplement its discovery responses. Defense counsel replied, "Yes, that's fine[.]" (Filing No. 54-6). On December 4, 2024, Plaintiff produced a document titled, "Production Schedule - Harvest 09.25.23 - 11.25.23," which "discloses Plaintiff's facility production schedule for a

6

sixty-day period that includes the date of the power outage." (Filing No. 54-1 at ¶ 12; Filing No. 49-9).

On January 13, 2025, Plaintiff produced a 1165-line spreadsheet in native format titled "Employee Hours 10-25-23 (Native Form)." The spreadsheet disclosed the job titles and respective number of hours each of Plaintiff's 1,165 affected employees working on the day of the power outage. Plaintiff's counsel avers that, after production of this spreadsheet, "Plaintiff possessed no additional documents responsive to Defendant's discovery requests as narrowed by counsel's meet-and-confer agreements reached in November." Defendant's counsel made no attempt to communicate with Plaintiff's counsel between December 3, 2024, and January 15, 2025. (Filing No. 54-1 at ¶¶ 12-15).

On January 15, 2025, Defendant's counsel communicated with Plaintiff's counsel requesting a 30-day extension of the expert disclosure deadline "Given the discovery issues and the inability to schedule the inspection[.]" Defense counsel also asked for an "update . . . on efforts to identify an inspection date? And whether you expect any additional supplemental discovery responses from [Plaintiff], and if so, when?" Plaintiff's counsel agreed to the extension and stated he would follow up on those inquiries. (Filing No. 54-8). On January 23, 2025, Plaintiff's counsel responded, "I will get you supplemental responses by next Tuesday. I thought we had dropped more into the ShareSpace, but I am checking on that."

At 3:34 p.m. on January 27, 2025, defense counsel emailed Plaintiff's counsel that his "client is very concerned about the upcoming expert deadline, MSJ deadline, still no inspection date, etc.," and that the client wanted a "motion on file to protect them with those deadlines coming up." (Filing No. 54-8). At 3:42 p.m. on January 27, 2025, Plaintiff's counsel served its Second Supplemental Responses to Requests for Production (Filing No. 49-11) and at 3:47 p.m. Plaintiff's counsel served its Second Supplemental Answers to Interrogatories (Filing No. 49-12). (Filing No. 54-1 at ¶¶ 17-18). Defendant filed its first motion for sanctions seeking dismissal of this case at 3:59 p.m. on January 27, 2025. (Filing No. 33; Filing No. 54-1 at ¶ 19). Counsel then spoke on the telephone on January 28, 2025, resulting in their agreement to mediate the case, extend deadlines, and for Defendant to withdraw the motion for sanctions. (Filing No. 54-1 at ¶¶ 20-21; Filing No. 54-9; Filing No. 40).

After the parties' February 14, 2025, mediation failed, counsel for the parties scheduled a site inspection for March 10, 2025 (which Defendant later cancelled), and identified depositions

7

they needed to take and exchanged their availability to begin scheduling depositions in March and early April 2025. (Filing No. 54-1 at ¶ 22).

Following the telephone status conference with the Court on February 26, 2025, counsel spoke by telephone and "agreed that, as a first step in the meet and confer process, Defendant's counsel would prepare a communication to Plaintiff's counsel outlining the discovery issues that Defendant perceived to be outstanding." Specifically, defense counsel was to "to send [to Plaintiff's counsel] bullet points of the specific areas of discovery that you think don't comport with our agreements or obligations, so that our side can work to address what you identify." (Filing No. 54-1 at ¶ 23; Filing No. 54-10). On March 5, 2025, after not receiving the bullet point list from defense counsel, Plaintiff's counsel followed up by email becoming "concerned about our ability to resolve/satisfy discovery concerns that you identify before March 12th [the new deadline for Defendant to file a motion to compel and for sanctions]." (Filing No. 54-11).

On March 5, 2025, defense counsel sent a letter outlining deficiencies in RFPs 7, 8, 14, 15, 37, 40, 44, 45, 46, 48, 54, 56, and 58, (none of which were subject to the Court's November 19, 2024, order approving their discovery agreement), and RFPs 18, 41, 42, 43, 51 (which were subject to the Court's November 19, 2024, order approving their discovery agreement); and deficiencies in Interrogatory Nos. 3, 12 and 14 (which were subject to the Court's November 19, 2024, order approving their discovery agreement), Interrogatory Nos. 4 and 9, (which were not subject to the Court's November 19, 2024, order approving their discovery agreement), and Interrogatory No. 11 (which was subject to the Court's November 19, 2024, order approving their discovery agreement with the caveat that specific names of non-managerial employees could be withheld unless Defendant later showed their relevance). (Filing No. 54-12).

Counsel thereafter met and conferred by telephone, resulting in Plaintiff's counsel sending a letter dated March 7, 2025, summarizing their discussion, which "focused . . . on the discovery requests identified within the November 2024 Stipulation/Order," specifically, RFPs 18, 41-43, and 51, and Interrogatory Nos. 3, 11, 12, and 14. Given their limited time for discussion, Plaintiff's counsel "look[ed] forward to speaking with you further regarding the remainder of your letter, but I think we made excellent progress during our call[.]" (Filing No. 54-13).

On March 11, 2025, Plaintiff's counsel sent defense counsel an email stating he "wanted to confirm that we will include employee names on the clock-in/clock-out spreadsheet in order to

8

kill the issue regarding their contact information. I will produce that spreadsheet today, before close of business." (Filing No. 54-14). Plaintiff served its Third Supplemental Response to Defendant's First Requests for Production of Documents on March 11, 2025; and served its Third Supplemental Response to Defendant's First Set of Interrogatories on March 12, 2025. (Filing No. 48). Defendant then immediately refiled the instant motion for sanctions. (Filing No. 49).

### DISCUSSION

Rule 37 of the Federal Rules of Civil Procedure permits the court to sanction a party that "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)[.]" Fed. R. Civ. P. 37(b)(2)(A). Dismissal of the action is one such sanction. Fed. R. Civ. P. 37(b)(2)(A)(v). "To justify a sanction of dismissal, Rule 37 requires: '(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)). "[A] district court has wide discretion to impose sanctions for a party's failure to comply with discovery requests," *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 936 (8th Cir. 1999), although "[t]he court's 'discretion is bounded by the requirement of Rule 37(b)(2) that the sanction be "just" and relate to the claim at issue in the order to provide discovery.'" *Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 719 (8th Cir. 2002) (quoting *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 558 (1992)). Before imposing the sanction of dismissal, "fairness requires a court to consider whether a lesser sanction is available or appropriate." *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000). A district court need not impose the least onerous sanction available, but the most appropriate under the circumstances. See *id.* District courts have "a large measure of discretion in deciding what sanctions are appropriate for misconduct." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000).

After review, the Court finds Defendant has wholly failed to show the sanction of dismissal, with or without prejudice, under Rule 37(b)(2)(A)(v) is warranted. Defendant's motion is premised entirely on Plaintiff's purported violation of the parties' joint stipulation dated November 19, 2024, which the Court approved on November 20, 2024. The Court never entered an order compelling discovery because Defendant never filed a motion to compel for

9

Plaintiff's purported noncompliance with their stipulation. See, e.g., *Signa Dev. Servs., Inc. v. Am. Int'l Materials, LLC*, No. 8:23CV415, 2024 WL 5058586, at *2 (D. Neb. Dec. 10, 2024) (denying the defendant's motion for sanctions "based on alleged noncompliance with the Amended Joint Stipulation" because "the Defendant did not file a motion to compel after it alleged Plaintiff's noncompliance with the stipulation," but instead prematurely filed a motion for sanctions "prior to any order compelling discovery[.]"). On this basis alone, the Court would deny Defendant's motion seeking dismissal as a sanction. See *Sentis*, 559 F.3d at 899 (requiring an order on a motion to compel as a prerequisite to moving for the sanction of dismissal); see also *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir. 1975) ("As we have said, supra, Rule 37(b) sanctions are not applicable absent a Rule 37(a) order, and Rule 37(d) sanctions only apply where there is a total non-compliance with discovery.").

To the extent the Court's November 20, 2024, order constitutes an "order to provide or permit discovery" under Rule 37(b)(2)(A) equivalent to granting a motion to compel, Defendant has failed to establish Plaintiff violated the order, let alone violated it "willfully" or in bad faith. The emails and communications before the Court establish that Plaintiff produced hundreds of documents, attempted to work with defense counsel to ascertain what deficiencies defense counsel believed remained in Plaintiff's discovery responses, and was responsive and candid in communications with opposing counsel following the Court's approval of their November 2024 stipulation. Plaintiff's production and answers to date do not reflect that Plaintiff has taken positions refusing wholesale to produce documents or answer interrogatories, has been unresponsive or uncooperative with defense counsel, has destroyed or hid evidence, or has otherwise attempted to intentionally stonewall Defendant in discovery; nor has Plaintiff defied the Court's instructions (to the limited extent the Court was notified there were ongoing issues) or demonstrated any intentional disobedience of Court's orders. Instead, Plaintiff believes it has responded to Defendant's discovery requests, properly objected when it believed those requests were overbroad, informed Defendant that certain documents do not exist after a reasonable inquiry, promptly responded to defense counsel's inquiries (and initiated follow ups on his own), and repeatedly worked with Defendant to narrow requests or ask Defendant to clarify what else it is seeking. Defendant has also created a moving target for Plaintiff's compliance, raising for the first time several new perceived deficiencies in Plaintiff's responses in Defendant's letter dated March 5, 2025, that were *not* addressed in the parties' November 2024 stipulation. (Filing No.

10

54-12). None of the above demonstrates Plaintiff has engaged in sanctionable conduct supporting dismissal of Plaintiff's claims under Rule 37(b)(2)(A)(v). See, e.g. *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (affirming district court's dismissal of lawsuit as a discovery sanction given the plaintiff's "serious misconduct" which included "non-production of medical information critical to UPS's defense, 'unbelievable' representations by [the plaintiff] . . . and violation of an order requiring production of the expert's test results," which the district court had found was an intentional violation); *Langford v. Father Flanagan's Boys' Home*, No. 8:23CV12, 2024 WL 1494688, at *2 (D. Neb. Apr. 5, 2024) (adopting the undersigned magistrate judge's recommendation of dismissal without prejudice as a discovery sanction for the plaintiff's complete failure to respond to discovery and "repeated[]" disobedience of court orders).

As an alternative sanction to dismissal, Defendant requests an order barring Plaintiff from offering evidence to support its claimed damages of lost wages and lost product under Rule 37(b)(2)(A)(ii). As identified in Plaintiff's initial disclosures, lost wages and lost product comprise the majority of the damages it seeks. (Filing No. 54-3). The Court agrees with Plaintiff that preventing Plaintiff from entering evidence as to those claims damages is tantamount to dismissal. See *Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 817 (8th Cir.2003) (where exclusion of evidence was tantamount to dismissal of claims, the district court should have considered lesser sanctions). And for the same reasons discussed above, the Court finds Plaintiff has not engaged in egregious, willful, or bad faith conduct, or otherwise clearly violated a Court order to support that requested sanction. See *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir.1995) ("[E]xclusion of evidence is a harsh penalty and should be used sparingly[.]").

This is now the third time Defendant has moved for dismissal of Plaintiff's claims as a discovery sanction. To the Court, this makes it appear as if Defendant is less concerned with actually obtaining outstanding discovery responses necessary to defend against Plaintiff's claims, and is more concerned with attempting to obtain the dismissal of this case without the Court reaching its merits. Defendant never contacted the Court to schedule a telephone conference to discuss outstanding discovery as required by this district's Magistrate Judge Case Management Practices and the Case Progression Order, never filed a motion to compel, and does not appear to have communicated to Plaintiff's counsel that any of its three motions for sanctions in the form

of dismissal were forthcoming. Unlike other cases where the Court found the harshest sanctions of dismissal or exclusion of evidence was warranted, this appears to be a generic dispute between counsel over the scope of permissible written discovery for which the standard discovery dispute resolution process should have been utilized.

Defendant has not asked the Court to compel any discovery, and only asked the Court to sanction Plaintiff by dismissing this case or prohibiting Plaintiff from offering evidence to support its claimed damages of lost wages and lost product. There is no basis for the Court to enter these harsh sanctions under Rule 37(b)(2). Accordingly,

**IT IS ORDERED:** Defendant's Refiled Rule 37(b)(2) Motion for Discovery Sanctions (Filing No. 49) is denied.

Dated this 6th day of June, 2025.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge